UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LAWANDA RUTLEDGE,                         )
     *Plaintiff*,                          )
                                          )
     *vs.*                                )     1:10-cv-01693-JMS-DML
                                          )
ELI LILLY & COMPANY,                      )
     *Defendant.*                         )

## ORDER

Presently pending before the Court is Defendant Eli Lilly & Company's ("Lilly") Motion for Summary Judgment.  [Dkt. 53.]  Plaintiff Lawanda Rutledge has limited her claims to racial discrimination stemming from Lilly allegedly forcing her to leave her position as a neuroscience sales representative in Nashville, Tennessee and transfer to an acute care sales representative position in Chicago, Illinois.[1]  For the following reasons, the Court grants Lilly's motion.

## I.
### BACKGROUND

The Court will only address the facts related to Ms. Rutledge's remaining claim that Lilly unlawfully discriminated against her based on her race by forcing her to leave her position in Nashville and transfer to Chicago.  The following facts are not in dispute.

Ms. Rutledge, who is African American, began working for Lilly in September 2003. [Dkts. 54-1 at 10; 69-3 at 15.]  She held a variety of positions at Lilly before becoming a sales representative in the Neuroscience Retail Division in approximately January 2006.  [Dkts. 54-1 at 8-10, 13-14; 69-13 at 3.]  In that position, Ms. Rutledge covered a sales territory in Nashville. [Dkt. 54-1 at 14.]  She reported to District Sales Manager Richard Williams.  [*Id.*]  Ms. Rutledge

---

[1] Ms. Rutledge confirmed this limitation during briefing on Lilly's motion.  [Dkt. 69 at 2 n.1.]

shared her sales territory with Kelly Crowe, who Mr. Williams stated he hired because he was familiar with her selling capabilities.  [Dkt. 54-1 at 14-15.]

In April 2006, Ms. Crowe began a maternity leave that lasted until August of that year.  [Dkts. 54-1 at 14; 69-6 at 4.]  During that time, Ms. Rutledge covered the Nashville territory herself.  [Dkt. 69-3 at 138-39.]  When Ms. Crowe returned, Mr. Williams told Ms. Rutledge that the Nashville territory was not large enough for two employees and that he would likely eliminate Ms. Rutledge's position if she ever left.  [Dkt. 54-1 at 15.]  He also told Ms. Rutledge that Lilly did not have a position for her or someone with a Ph.D. "here," and suggested that she look for another job.  [Dkts. 54-1 at 55; 54-2 at 13.]

In approximately August 2006, Ms. Rutledge discussed Mr. Williams' comments with Lilly Human Resources representative Mascelia Miranda.  [Dkt. 54-2 at 9-10.]  Ms. Miranda advised Ms. Rutledge that Mr. Williams did not have the authority to terminate her position.  [*Id.*]  Despite Ms. Miranda's reassurances, Ms. Rutledge remained concerned about losing her position and began considering alternative job opportunities within Lilly.  [Dkt. 54-1 at 15.]  In October 2006, Ms. Rutledge applied for and received a promotion to an acute care sales representative position in Chicago.  [Dkt. 54-1 at 15, 50.]  Although she had been thinking about relocating to Chicago because her family and future husband lived there, she maintains that she did not want to leave Nashville.  [Dkt. 54-1 at 18, 39-40.]

In her new position as acute care sales representative, Ms. Rutledge was elevated from Tier II to Tier III (four being the top tier, with each tier being successively higher paid), increasing her base salary by at least $2,400.  [Dkts. 54-1 at 15; 54-2 at 16-18.]  Since Ms. Rutledge applied for the acute care sales representative position, Lilly treated it as an employee-requested transfer making her ineligible for Lilly's "Program 5" relocation package which includes the po-

tential of receiving reimbursement for expenses relating to selling the employee's residence, temporary living allowance, and other potential benefits. [Dkts. 69-7 at 5-10; 69-8 at 1-10; 69-9 at 1-11; 69-10 at 1-12.] Lilly did pay for Ms. Rutledge's moving expenses. [Dkt. 54-1 at 21.]

Ms. Rutledge also claims that as a result of her relocation to Chicago, her eligibility to apply for a promotion within Lilly was delayed because employees must be at their current position for two to three years before applying for a new position. [Dkt. 69-13 at 3-4.] Ms. Rutledge did, however, receive a promotion to senior sales representative just five months after moving to Chicago, became an associate in May 2010, and ultimately was promoted to District Sales Manager in April 2011. [Dkts. 54-2 at 16-17, 20-23; 69-13 at 4.]

## II.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is

competent to testify on matters stated.  Fed. R. Civ. Pro. 56(c)(4).   Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment.  Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment.  *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## III.
### DISCUSSION

Lilly argues that Ms. Rutledge has not made a prima facie case of discrimination because she has not shown that Lilly took any adverse employment action against her.  Lilly also argues that Ms. Rutledge has not presented any evidence that Lilly's proffered non-discriminatory reason for allegedly preferring that Ms. Crowe handle the Nashville territory alone is pretext.

### A.  Analyzing Racial Discrimination Claim

#### 1.  *Analyzing Title VII and § 1981 Claims on Summary Judgment*

Ms. Rutledge asserts a racial discrimination claim pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  [Dkt. 69 at 18 ("Plaintiff's claim for intentional race discrimination is brought under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, as amended.").]  To overcome a Title VII or § 1981 claim on summary judgment, Ms. Rutledge may either provide direct evidence of discrimination, *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), or show indirect evidence under the burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999) (holding that same frameworks are used to analyze § 1981 and Title VII claims).  Ms. Rutledge relies on the indirect method.

To survive summary judgment, Ms. Rutledge must first establish a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  Specifically, she must show that (1) she was a member of a protected class, (2) she adequately performed her employment responsibilities, (3) despite adequate performance, she suffered an adverse employment action, and (4) she received different treatment than similarly situated persons who were not members of the same protected class.  *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007) (citation omitted).  If Ms. Rutledge can make that showing, the burden shifts to Lilly to come forth with a "legitimate, non-discriminatory reason" for its actions.  *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010) (citation omitted).  If Lilly can do so, it will prevail unless Ms. Rutledge can come forward with evidence that the proferred non-discriminatory reason is "a pretext for inten-

tional discrimination." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011) (citation omitted).

### 2. *Adverse Employment Action*

The parties do not dispute that Ms. Rutledge is a member of a protected class or that she adequately performed her employment responsibilities while working under the supervision of Mr. Williams.  Instead, the parties dispute whether Ms. Rutledge has shown that Lilly took adverse employment action against her and whether she has proffered a similarly situated comparator to establish a prima facie case of discrimination.

Ms. Rutledge's argument that Lilly took adverse employment action against her is premised on her claim that her move to Chicago for the acute care sales representative position was not voluntary, even though she sought out the position and applied for it.  Ms. Rutledge essentially argues that she was constructively discharged from her position in Nashville forcing her to apply for the Chicago position, or that she was "constructively transferred" to Chicago.  Lilly responds that Mr. Williams' statements would not communicate to a reasonable employee that they would be discharged, especially since the Human Resources representative told Ms. Rutledge that Mr. Williams did not have authority to terminate her.  Lilly also argues that the fact that Ms. Rutledge was promoted through the move to Chicago is fatal to her claims.

The Seventh Circuit Court of Appeals has held that, to the extent a claim for constructive transfer exists, it is governed by the same standards as a constructive discharge claim. *White v. Dial Corp.*, 1995 U.S. App. LEXIS 7838 at * 4-6 n. 6 (7th Cir. 1995) ("Whether an employee can secure reinstatement and backpay by showing that she was constructively *transferred* is a question we have not previously decided, but for present purposes we shall assume that the answer is yes . . . .  [Plaintiff] must show . . . not only that she perceived her environ-

ment . . . to be abusive, but that a reasonable person would have so perceived it as well") (original emphasis).  Even if Ms. Rutledge has shown that she believed her environment was abusive,[2] she has not shown that a reasonable person would have perceived it to be so.  Ms. Rutledge has not put forth any evidence showing that Mr. Williams ever attempted to have her position terminated or ever gave her negative performance reviews that affected her opportunity for advancement.  The impact of his statements to Ms. Rutledge regarding finding a new job are lessened considerably by the fact that Lilly's Human Resources representative told her Mr. Williams did not have the authority to terminate her.  In sum, a reasonable employee would not have felt forced into seeking transfer based on his comments.

Because Ms. Rutledge was not constructively transferred or discharged from her Nashville position, but rather voluntarily sought out the transfer, Lilly cannot be said to have taken any "action" against her.  However, even if Lilly did take some "action," it cannot be considered "adverse."  The Seventh Circuit Court of Appeals has set forth three general categories of materially adverse employment actions which are actionable:  "(1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and

---

[2] Ms. Rutledge also argues that the statements of Ms. Crowe contributed to the pressure she felt to leave the Nashville position.  [Dkt. 69 at 25 ("After speaking with Mr. Williams, Ms. Crowe also told Ms. Rutledge repeatedly that she and Mr. Williams believed it would be best if Ms. Rutledge found a different position because the territory was not big enough for two people.") (citing dkt. 69-3 at 29, 109).]  Lilly argues that any statements by Ms. Crowe are irrelevant and inadmissible hearsay.  [Dkt. 77 at 8 n. 3.]  Even assuming that Ms. Crowe's statements are relevant and admissible, the Court is not persuaded that they would cause a reasonable person to feel forced out of the Nashville position, especially since Ms. Crowe was not Ms. Rutledge's supervisor.

(3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment." *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). Within this framework, "[a] purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do . . . ." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996*).

  Ms. Rutledge concedes that her transfer to Chicago was, in fact, a promotion. [Dkt. 54-1 at 18.] Because a lateral transfer without loss of benefits does not constitute an adverse employment action, *id.*, a promotion – especially where, as here, the employee sought out and applied for the promotion – would not constitute adverse employment action either. Nevertheless, the Court will consider Ms. Rutledge's arguments that the promotion somehow adversely affected her.

  Ms. Rutledge argues that her "involuntary" relocation to Chicago was an adverse employment action because: (1) it required her to move from Nashville to Chicago – a move she did not want to make and which was expensive due to the higher cost of living in Chicago; (2) since Lilly treated the move as employee-initiated, Ms. Rutledge was not eligible for certain relocation benefits under Lilly's "Program 5"; and (3) the transfer to a new position delayed her eligibility to apply for a promotion under Lilly's rule that an employee must hold their current position for two to three years before applying for a new position. [Dkt. 69 at 21-24.] The Court concludes that none of these alleged consequences of Ms. Rutledge's transfer turns it into an adverse employment action.

First, the evidence does not support Ms. Rutledge's argument that moving to Chicago was a negative consequence of the transfer. Indeed, she testified that she had been considering relocating to Chicago because her family and future husband lived there. [Dkt. 54-1 at 39-40.] Ms. Rutledge also stated that when the Lilly Human Resources representative asked her during her process of relocating to Chicago whether she wanted to go back to Nashville or continue in her position in Chicago, she "[didn't] think [she] had a feeling either way." [Dkt. 54-1 at 18.] And while the cost of living was likely higher in Chicago, Ms. Rutledge's salary increased by at least $2,400 per year and she received another promotion shortly after moving to Chicago which resulted in a salary increase of about $11,000. [Dkts. 54-1 at 34; 54-2 at 16-18.]

Second, Ms. Rutledge's claim that the move to Chicago was detrimental because she did not receive certain relocation benefits under Lilly's "Program 5," such as reimbursement for expenses associated with selling her home in Nashville, purchasing her Nashville home at its appraised value if it did not sell within a certain amount of time, providing a home-finding and temporary living allowance, and additional financial assistance to help her "adjust to the higher costs associated with living in Chicago relative to Nashville[,]" [dkt. 69 at 23], is unavailing. Lilly treated the relocation as voluntary – and consequently not falling within the "Program 5" benefits – because it was voluntary. As discussed above, Ms. Rutledge has not presented sufficient evidence to show that she was somehow forced to transfer positions.

Finally, Ms. Rutledge's argument that the transfer to Chicago made her ineligible to apply for a promotion due to Lilly's requirement that she continue in the same position for two to three years is inconsistent with the evidence and does not make Lilly's employment action adverse. Ms. Rutledge has steadily risen through the ranks at Lilly, becoming a senior sales representative (a promotion from her initial position in Chicago) just five months after transferring to

Chicago, an associate in May 2010, and a District Sales Manager in April 2011.  [Dkts. 54-1 at 28; 69-4 at 42-43, 46-49; 69-13 at 4.]  Accordingly, her claim that the transfer somehow delayed her ability to apply for and receive promotions is without merit.

For these reasons, the Court concludes that Ms. Rutledge has not come forth with sufficient evidence to show that Lilly took adverse employment action against her.  Therefore, she cannot establish a prima facie case of discrimination, and the Court need not reach the issue of whether Lilly had a legitimate, non-discriminatory reason for its action.[3]  Accordingly, Lilly's motion for summary judgment is granted.

## IV.
### CONCLUSION

For the reasons explained herein, the Court **GRANTS** Lilly's Motion for Summary Judgment on Ms. Rutledge's claims.  [Dkt. 53.]  Judgment will enter accordingly.

07/26/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

---

[3] Even if the Court were to find that Lilly took adverse employment action against her by allegedly forcing her to transfer so Ms. Crowe could handle the Nashville territory alone, Ms. Rutledge has not satisfied the fourth prong of a prima facie case of discrimination – that she received different treatment than similarly situated persons who were not members of the same protected class.  Ms. Rutledge argues that Ms. Crowe is a similarly situated comparator; however, Ms. Crowe had significantly more sales experience than Ms. Rutledge and was already a senior sales representative. [Dkt. 69-6 at 2-11.]  She had sold in the Nashville territory prior to Ms. Rutledge joining her, under Mr. Williams' supervision.  [Dkt. 69-3 at 26-27, 111-12.]  In contrast, Ms. Rutledge sold Lilly medicines for less than one year, several years before beginning the Nashville position.  [Dkt. 69-3 at 3-6.]

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Ellen E. Boshkoff
FAEGRE BAKER DANIELS LLP - Indianapolis
ellen.boshkoff@faegrebd.com

Benjamin C. Ellis
BETZ & BLEVINS
bellis@betzadvocates.com

Matthew Louis Schmid
SANFORD WITTELS & HEISLER, LLP
mschmid@swhlegal.com